**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARA ZAJAC and LACHAE VICKERS, individually and on behalf of all others similarly situated,<br><br>                             Plaintiffs,<br><br>        v.<br><br>THE STOP & SHOP HOLDINGS, INC.,<br><br>                             Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Cara Zajac and Lachae Vickers ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendant The Stop & Shop Holdings, Inc. ("Defendant" or "Stop & Shop") based on false and deceptive advertising and labeling of its avocado oil products.  Plaintiffs make the following allegations based on the investigation of their counsel, and on information and belief, except as to allegations pertaining to Plaintiffs themselves, which are based on their personal knowledge.

## <u>NATURE OF THE ACTION</u>

1.      During the statute of limitations period, Stop & Shop marketed, labeled, advertised, and sold its Stop & Shop brand Avocado Oil (the "Class Products") to consumers with packaging that prominently and unequivocally states that the oil is "Avocado Oil" (the "*Avocado Oil Representation*").

2.      Reasonable consumers believe, based on the *Avocado Oil Representation*, that the Class Products are pure avocado oil.  However, unbeknownst to consumers, the Class Products are adulterated with other oils.

1

3.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Product during the statute of limitations period, for violations of New York's Gen. Bus. Law ("GBL") §§ 349 and 350, breach of express warranty, and fraud.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

5.      This Court has personal jurisdiction over Stop & Shop because Stop & Shop has sufficient minimum contacts with the State of Massachusetts, and/or otherwise intentionally avails itself of the State of Massachusetts, through the promotion, marketing, and sale of the Class Products in this State (including in this District) to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff Zajac purchased the Class Product in this District.

## PLAINTIFF

7.      Plaintiff Cara Zajac is a citizen and resident of the United States and the State of Massachusetts.  She currently resides in New Bedford, Massachusetts.

8.      Within the past three years, Plaintiff Zajac purchased a bottle of Stop & Shop's Avocado Oil at a Stop & Shop store near her residence in Massachusetts.  Plaintiff Zajac saw and relied on the *Avocado Oil Representation* in making her purchase.  Plaintiff Zajac reasonably believed, based on the *Avocado Oil Representation*, that she was purchasing pure avocado oil,

and this belief was an important part of her decision to purchase the Class Product.  Had Plaintiff Zajac known that the Class Product was adulterated with other oils and was not pure avocado oil, she would not have purchased it, or she would have paid less for it.  Thus, Plaintiff Zajac has suffered an injury in fact and lost money as a result of Stop & Shop's misleading, false, unfair, and deceptive practices, as alleged herein.

9.      Plaintiff Lachae Vickers is a citizen and resident of the United States and the State of New York.  She currently resides in Shirley, New York.

10.      Within the past 3 years, Plaintiff Vickers purchased a bottle of Stop & Shop's Avocado Oil at a Stop & Shop store near her residence in New York.  Plaintiff Vickers saw and relied on the *Avocado Oil Representation* in making her purchase.  Plaintiff Vickers reasonably believed, based on the *Avocado Oil Representation*, that she was purchasing pure avocado oil, and this belief was an important part of her decision to purchase the Class Product.  Had Plaintiff Vickers known that the Class Product was adulterated with other oils and was not pure avocado oil, she would not have purchased it, or she would have paid less for it.  Thus, Plaintiff Vickers has suffered an injury in fact and lost money as a result of Stop & Shop's misleading, false, unfair, and deceptive practices, as alleged herein.

11.      Plaintiffs will be unable to rely on the Class Products' *Avocado Oil Representation* in the future, and so will be unable to purchase the Class Products in the future, although they would like to.  However, Plaintiffs remain interested in purchasing pure avocado oil products, intend on purchasing them in the future, and would consider purchasing Defendant's Class Products in the future if Defendant ensured that the *Avocado Oil Representation* was accurate and truthful.

**DEFENDANT**

12.     The Stop & Shop Holdings, Inc., is a Massachusetts corporation with its headquarters and principal place of business in Quincy, Massachusetts.  Stop & Shop is registered to do business in the state of New York and beginning in 2001, began "an aggressive expansion into the New York Metro region."[1]  Stop & Shop operates more than 400 stores throughout New York, New England, and New Jersey[2] and prides itself in its "commit[ment] to providing useful information to consumers interested in food safety, nutrition, and product handling."[3]  On their website's mission statement page, Stop & Shop boasts, "When sourcing products, especially or Own Store Brand[,] we take into consideration product safety, [and] quality…"[4]

13.     Defendant is directly involved in the manufacturing, sale, and distribution of Class Products, and is responsible for the advertising, marketing, trade dress, and packaging of the Class Products.  Defendant developed, marketed, and sold the Class Products during the class period.

14.     Defendant has labeled, advertised, distributed, and sold the Class Products at its locations in Massachusetts and New York during the statute of limitations period under its private label brand.

---

[1] https://stopandshop.com/pages/about-us

[2] *Id.*

[3] https://stopandshop.com/pages/food-safety

[4] *Id.*

## FACTUAL ALLEGATIONS

**A.     The *Avocado Oil Representation* is False and Deceptive**

15.     The Class Products consist of Stop & Shop's brand Extra Virgin Avocado Oil.

The *Avocado Oil Representation* is prominently displayed on the front label in the same manner

on all Class Products, as depicted in the following representative image:



16.     As can be seen from the above images, the *Avocado Oil Representation* conveys

the unequivocal message that the Class Products are pure avocado oil.

17.     Moreover, the front label depicts an avocado cut open, adding to the effect of the

representation.

18.     This message is further reinforced by the ingredient list on the Class Products'

back label, which lists "extra virgin avocado oil" as the only ingredient.

19.    Stop & Shop does not disclose anywhere that the Class Products are adulterated with other oils.  Thus, consumers reasonably believe the Class Products are solely avocado oil.

20.    The Class Products are not pure avocado oil.  Based on Plaintiffs' investigation, the Class Products are not pure avocado oil and are in fact adulterated.  Thus, the claim is false and misleading.

  **B.    The *Avocado Oil Representation* is Material**

21.    The *Avocado Oil Representation* is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Class Products.[5]

22.    Avocado oil is well-known to be one of the healthiest cooking oils.  For example, studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure, LDL cholesterol, as well as reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels.[6]  It is also high in monounsaturated fat, which is considered more heart healthy than saturated fat while being slightly more stable than the polyunsaturated fats typically found in vegetable oils.[7]  Avocado oil is also a high demand cooking oil because it has the highest smoke point of all plant-based cooking oils.[8]

23.    Regardless of whether consumers believe avocado oil is superior to other oils, the issue of whether the avocado oil is pure or is adulterated is material to reasonable consumers. For example, consumers may be allergic to, or have other reasons for not consuming, certain

---

[5] For instance, a 8.45 fl. oz. bottle of the Class Products cost $8.69, or roughly $1.03 per fluid ounce. By contrast, a 24 fl. oz. bottle of Stop & Shop's Vegetable Oil costs $4.49, or $0.19 per fluid ounce. Similarly, a 48 fl. oz. bottle of Stop & Shop's Canola Oil costs $4.99, or $0.10 per fluid ounce.

[5] https://www.healthline.com/nutrition/9-avocado-oil-benefits#TOC_TITLE_HDR_4 (last visited on February 20, 2024).

[6] https://www.healthline.com/nutrition/9-avocado-oil-benefits#TOC_TITLE_HDR_4 (last visited on February 20, 2024).

[7] https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil (last visited on February 20, 2024).

[8] *Id.*

oils.  Consumers of the Class Products reasonably expect to know what type of oil they are consuming.

24.     Consumers purchased, and continue to purchase, the Class Products in part because the *Avocado Oil Representation* conveys the unequivocal message that it is pure avocado oil.  Plaintiffs and Class members would have paid less for the Class Products, or would not have purchased them at all, if not for the *Avocado Oil Representation*.  Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Class Products command in the market as a result of Defendant's representations that the Class Products are pure avocado oil.

### C.     The Class Products are Not Pure Avocado Oil

25.     On August 27, 2024, The Washington Post reported that "adulteration is rampant in the avocado oil industry, and many people are being misled by some of the nation's largest retail chains."[9]

26.     The article discussed, in detail, the findings of studies conducted by scientists at the University of California at Davis ("UC Davis").  This UC Davis study was published in *Food Control*, an official scientific journal of the European Federation of Food Science and Technology and the International Union of Food Science and Technology.[10, 11]

27.     The study revealed that the Class Products are not pure avocado oil, but "tested impure."[12]

---

[9] Anahad O'Connor and Aaron Steckleberg, *Why your avocado oil may be fake and contain other cheap oils*, The Washington Post, https://www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/ (last visited Aug. 30, 2024).
[10] Hilary S. Green and Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, 116 Food Control 107328 (Oct. 2020).
[11] Hilary S. Green and Selina C. Wang, *Purity and quality of private labelled avocado oil*, 152 Food Control 109837 (Oct. 2023).
[12] O'Connor and Steckleberg, *Why your avocado oil may be fake*, *supra*.

## CLASS ALLEGATIONS

28.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23, and all other

applicable laws and rules, individually, and on behalf of all members of the following Classes:

> **Nationwide Class**
>
> All natural persons who purchased at least one of the Class
> Products in the United States within the applicable statute of
> limitations period
>
> **Massachusetts Subclass**
>
> All natural persons who purchased at least one of the Class
> Products in the State of Massachusetts within the applicable statute
> of limitations period.
>
> **New York Subclass**
>
> All natural persons who purchased at least one of the Class
> Products in the State of New York within the applicable statute of
> limitations period.

29.     Plaintiff Zajac seeks to represent a subclass of all Class Members who purchased

the Class Product in Massachusetts during the applicable statute of limitations period (the

"Massachusetts Subclass").

30.     Plaintiff Vickers seeks to represent a subclass of all Class Members who

purchased the Class Product in New York during the applicable statute of limitations period (the

"New York Subclass").

31.     Excluded from the Classes are the following individuals and/or entities:

Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former

employees, and any entity in which Defendant has a controlling interest; all individuals who

make a timely election to be excluded from this proceeding using the correct protocol for opting

out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

32.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

33.     <u>Numerosity</u>: The proposed Classes are so numerous that joinder of all members would be impractical.  The Class Products are sold throughout the United States and the States of Massachusetts and New York.  The number of individuals who purchased Class Product during the relevant time period is at least in the hundreds.  Accordingly, Class members are so numerous that their individual joinder herein is impractical.  While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

34.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members.  These questions include, but are not limited to, the following:

(a)     Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Class Products;

(b)     Whether Defendant's use of the challenged packaging, i.e., the *Avocado Oil Representation*, constituted false or deceptive advertising;

(c)     Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

(d)     Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

(e)     Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and if so, in what amount;

(f)     Whether Plaintiffs and the Classes are entitled to statutory damages, and if so, in what amount; and

(g)     Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

35.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Class Products. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of Class Products: (a) bears the same material *Avocado Oil Representation*, and (b) the Class Products do not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

36.     <u>Superiority</u>: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

37.     <u>Typicality</u>: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

38.     <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in similar class action litigation.  The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their counsel.

39.     Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**COUNT I**
**Violation of New York's Gen. Bus. Law § 349**
(***On Behalf of the New York Subclass***)

40.     Plaintiff Vickers hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

41.     This cause of action is brought pursuant to New York's Gen. Bus. Law section 349, *et seq*., on behalf of Plaintiff Vickers and a New York Subclass who purchased the Class Products within the applicable statute of limitations.

42.     New York Gen. Bus. Law, sections 349, *et seq.*  prohibits the "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state."

43.     Defendant, in its advertising and packaging of the Class Products, made false, misleading, and deceptive representations and/or omissions about the purity of the Class Products to mislead consumers into believing the Class Products were pure avocado oil, when they are not.

44.     Defendant's labeling and advertising of the Class Products led to, and continues to lead to, reasonable consumers, including Plaintiff Vickers, believing that the Class Products

11

contain pure avocado oil.

45.     Defendant used the *Avocado Oil Representation* with the intent to sell the Class Products to consumers, including Plaintiff Vickers and the New York Subclass.  The *Avocado Oil Representation* is false, and Defendant knew or should have known of its falsity.  The *Avocado Oil Representation* is likely to deceive consumers into purchasing the Class Products because they are material to the average, ordinary, and reasonable consumer.  Defendant knew consumers would purchase the Class Products and/or pay more for them under the false – but reasonable – belief that the Class Products were pure avocado oil, when they are not.  By advertising so prominently that the Class Products were pure avocado oil, Defendant proves that information about the purity of the Class Products is material to consumers.  As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Class Products to unsuspecting consumers across New York.  If Defendant had advertised its Class Products truthfully and in a non-misleading fashion, Plaintiff Vickers and other New York Subclass Members would not have purchased it or would not have paid as much as they did for them.

46.     Plaintiff Vickers and the New York Subclass reasonably and detrimentally relied on the material and false *Avocado Oil Representation* to their detriment in that they purchased the Class Products.

47.     Plaintiff Vickers has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Vickers purchased the Class Product for her own personal use. In doing so, Plaintiff Vickers relied upon Defendant's false, misleading, and deceptive representations that the Class Product was pure avocado oil, when it was not.  Plaintiff Vickers spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

48.     Plaintiff Vickers and the New York Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's deceptive advertising—namely Plaintiff Vickers and the New York Subclass lost the price premium associated with the Class Products they bought from Defendant.

49.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff Vickers and members of the New York Subclass were harmed in that they: (1) paid money for the Class Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Class Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Class Products they purchased had less value than if the *Avocado Oil Representation* were truthful.  Accordingly, Plaintiff Vickers seeks to recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT II
**Violation of New York's Gen. Bus. Law § 350**
**(*On Behalf of the New York Subclass*)**

50.     Plaintiff Vickers hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

51.     Plaintiff Vickers brings this claim individually and on behalf of the New York Subclass who purchased the Class Products within the applicable statute of limitations.

52.     The New York False Advertising Law, codified at Gen.  Bus. Law section 350, *et seq.*, prohibits advertising, including labeling, that "is misleading in a material respect."

53.     Defendant violated section 350 when it advertised and marketed the Class Products through the unfair, deceptive, untrue, and misleading *Avocado Oil Representation* disseminated to the public through the Class Products' labeling, packaging and advertising.

These representations were false because the Class Products do not conform to them.  The representations were material because they are likely to mislead a reasonable consumer into purchasing the Class Products.

54.    In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading.

55.    Defendant's *Avocado Oil Representation* was specifically designed to induce reasonable consumers, like Plaintiff Vickers and the New York Subclass, to purchase the Class Products.

56.    Plaintiff Vickers has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Vickers purchased the Class Product for her own personal use. In doing so, Plaintiff Vickers relied upon Defendant's false, misleading, and deceptive representations that her Class Product was pure avocado oil, when it was not.  Plaintiff Vickers spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

57.    As a direct and proximate result of Defendant's misconduct, Plaintiff Vickers and members of the New York Subclass were injured in that they: (1) paid money for Class Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Class Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Class Products they purchased had less value than if Defendant's *Avocado Oil Representation* were truthful.  Accordingly, on behalf of herself and members of the New York Subclass, Plaintiff Vickers seeks to recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
## Fraud Breach of Express Warranty
### (*For all Classes*)

58.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

60.     On September 16, 2024, prior to filing of this Complaint, Plaintiffs' counsel sent a letter to Defendant on behalf of Plaintiffs and all other similarly situated individuals providing notice of breach of express warranty.  The letter also demanded that Defendant make full restitution to purchasers of all monies received therefrom.

61.     As the designer, manufacturer, marketer, distributor, and/or seller of the Class Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Class Products were pure avocado oil.  Defendant's *Avocado Oil Representations* were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and members of the Class and Subclasses.

62.     In fact, the Class Products do not conform to Defendant's *Avocado Oil Representation* because they are impure and are adulterated with other oils.  By falsely representing the Class Products in this way, Defendant breached express warranties.

63.     As a direct and proximate result of Defendant's breach, Plaintiffs and members of the Class and Subclasses were injured because they: (1) paid money for the Class Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Class Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Class Products they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false

representations alleged herein, Plaintiffs and members of the Class and  Subclasses would not have purchased the Class Products or would not have paid as much as they did for them.

## COUNT IV
### Fraud
#### (*For all Classes*)

64.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

66.     Defendant affirmatively misrepresented to consumers that the Class Products were pure avocado oil despite the fact the Class Products were adulterated with other oils and are not pure avocado oil.

67.     The *Avocado Oil Representation* is material to a reasonable consumer because it relates to the quality, safety, utility, and healthfulness of the Class Products.  A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to oil that is consumed—i.e., oil that is used for cooking or consumed raw.

68.     At all relevant times, Defendant knew that the *Avocado Oil Representation* was misleading.  Defendant intends for Plaintiffs and other consumers to rely on the *Avocado Oil Representation*, as evidenced by Defendant intentionally and conspicuously placing it on the packaging of the Class Products.  In the alternative, Defendant acted recklessly in making the *Avocado Oil Representation* without regard to the truth.

69.     Plaintiffs and members of the proposed Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations (*i.e.*, the *Avocado Oil Representation*) when purchasing the Class Products, and had the correct facts been known, would not have purchased

them at the prices at which they were sold in the market, or would not have purchased them at all.

70.     Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the price premium for the Class Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs individually and on behalf of the proposed Classes, respectfully seek judgment against Defendant as follows:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel; Certifying the nationwide Class, the Massachusetts Subclass, and the New York Subclass, under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class   the corresponding Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

B.    A declaration that Defendant's actions, as described herein, violate the laws described herein;

C.    Finding in favor of Plaintiffs, the nationwide Class, the Massachusetts Subclass, and the New York Subclass, against Defendant on all counts asserted herein;

D.    An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.    An award of punitive damages, statutory damages, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

G.    An award to Plaintiffs and their counsel of reasonable expenses and attorneys' fees;

H.    An award to Plaintiffs and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

17

I.      For such further relief that the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.


Dated:  October 1, 2024                    Respectfully submitted,

                                           */s/ Joel D. Smith*
                                           Joel D. Smith (BBO 712418)
                                           SMITH KRIVOSHEY, PC
                                           867 Boylston Street 5th Floor #1520
                                           Boston, MA 02116
                                           Telephone: 617-377-4704
                                           Facsimile: (888) 410-0415
                                           E-Mail: joel@skclassactions.com

                                           Yeremey O. Krivoshey (Cal. Bar No. 295032)
                                           (*pro hac vice* motion forthcoming)
                                           SMITH KRIVOSHEY, PC
                                           166 Geary Str STE 1500-1507
                                           San Francisco, CA 94108
                                           Telephone: 415-839-7077
                                           Facsimile: (888) 410-0415
                                           E-Mail: yeremey@skclassactions.com

                                           *Attorneys for Plaintiff*
                                           *and the Proposed Class and Subclass*